IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MATTHEW QUINN MASON,

        Petitioner,

v.                                                   Civil Action No. 3:11cv60
                                                   Criminal Action No. 3:08-cr-30-02

UNITED STATES OF AMERICA,

        Respondent.

## REPORT & RECOMMENDATION

### *I. INTRODUCTION*

The facts of this case have been detailed at length in previous filings, so the Court will stick to just those pertinent to the resolution of the remaining issues before it. Petitioner was convicted on all counts, in a three count indictment, for conspiracy to retaliate against a federal witness, aiding and abetting in the retaliation against a federal witness, and destruction of a federal witness's property. The conviction stems from an April 2008 shooting where Petitioner, his co-defendant, Travis Jackson Latta, and a still unnamed third member of the conspiracy,[1] shot at Darryl Fontane Clinkscale. The government argued, and obtained a conviction upon the argument, that the shooting was motivated by Clinkscale's testimony in a trial against Cecil Ray, who was sentenced to life in prison in an unrelated drug case.

Petitioner went to trial in October 2008 and, as mentioned, was convicted following a two day trial. Three days prior to the start of the trial, the United States submitted its notice to introduce

---

[1] The third accomplice, who also fired shots at Clinkscale's vehicle, has always been referred to as "Tank."

the testimony of Clinkscale regarding interactions between himself and Petitioner during time they spent together in the Eastern Regional Jail (ERJ). Briefly, Clinkscale was in the ERJ pursuant to a writ, and was transferred to that facility from his place of incarceration in New Jersey solely to testify in the trial of Cecil Ray. Petitioner was at the ERJ for reasons unknown to this Court, but unrelated to the charges for which he was convicted. Needless to say, the two were in the same facility, as was Cecil Ray, in the days leading up to Ray's August 2007 trial. Counsel for Petitioner, Lary D. Garrett, objected to the admission of the testimony, but the Court overruled the objection.

Following the conviction, Petitioner appealed to the Fourth Circuit Court of Appeals, arguing that the court erred in denying his motion for judgment of acquittal because there was insufficient evidence to convict him, and erred by admitting the aforementioned evidence of the ERJ interactions between Petitioner and Clinkscale. In a per curiam opinion, the Fourth Circuit affirmed the conviction because, in viewing the evidence in a light most favorable to the government, there was no clear failure in the Government's evidence to support reversal. Moreover, the Court found that the District Court did not abuse its discretion in admitting the testimony because it was relevant and probative of an issue other than Petitioner's character.

The instant petition for relief under § 2255 followed, in which Petitioner raised several points of error. After issuing a Report and Recommendation (R & R), and advising Petitioner of the right to object and consequences for not objecting, no objections were filed. Because no objections were filed, the district judge reviewed the R & R for clear error, found none, and adopted the R & R in its entirety. Petitioner then filed a motion for a certificate of appealability, arguing that he was placed in the Special Housing Unit (SHU) and did not have the opportunity to object. This Court denied the motion.

Petitioner then filed an appeal with the Fourth Circuit, which issued a certificate of appealability because the dispositive procedural ruling by the district court was debatable, and because the 2255 raises debatable constitutional questions. Specifically, the Court addressed two constitutional questions that have arguable merit, both in the realm of the guarantee to effective assistance of counsel. First, the Court questioned counsel's failure to investigate the possibility of impeaching Clinkscale because Petitioner argues that he was in the SHU during the time when Clinkscale claimed the interactions occurred. Second, the Court questioned if counsel failed to convey a plea offer on the day of the trial. For these two reasons, the Fourth Circuit vacated this Court's order adopting the R & R and remanded the case for further proceedings.

On remand, this Court allowed Petitioner to file untimely objections to the R & R, which he did. The district judge then conducted a *de novo* review of the portions of the R & R to which Petitioner objected. In short, the district judge adopted the R & R in its entirety with the exception of the two constitutional issues raised by the Fourth Circuit: the failure to investigate, and the failure to convey a plea offer. The district judge then referred these two matters back to the undersigned to conduct an evidentiary hearing and produce a further R & R to those two issues. The undersigned held that hearing on November 27, 2012.

At the hearing, several exhibits were offered, and several witnesses testified. Petitioner offered, as did the government, exhibits which showed the housing arrangements for Petitioner, Clinkscale, and Cecil Ray, for the days leading up to Ray's trial. Moreover, the government offered several pictures of Section 5 of A-pod at the ERJ, and letters from Petitioner's counsel. Finally, the Government produced the written plea agreement offered by the government, and a transcript from a pretrial hearing where Petitioner wanted new counsel because he claimed that his first appointed

lawyer was too insistent on him pleading to the charge, and that he did not want to plea. Petitioner testified at the hearing, as did his counsel, Mr. Garrett, and David E. Bittinger, Chief Correctional Officer at ERJ.

## II. STANDARD OF REVIEW

Because the two issues before this Court both deal with whether Petitioner was provided with effective legal assistance, the Court applies the familiar two part test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order for Petitioner to show that he has been deprived of his constitutional right to effective counsel, he must show two things. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "'Deficient performance' is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." *Griffin v. Warden, Maryland Corr. Adj. Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992).

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. In order to demonstrate prejudice, the defendant must show that but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. Failure to meet either prong would defeat Petitioner's ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

## III. DISCUSSION

Petitioner claims that his counsel was ineffective for two reasons. First, because counsel did

4

not convey a day-of-trial plea offer to him; an offer Petitioner avers he would have accepted. Second, because counsel did not investigate his claims that he was in the SHU during the time that Clinkscale testified the two had interactions, and that this testimony that went to motive was key in the government's case. The Court will address each contention in turn.

*A. The Plea*

Petitioner had two lawyers in his criminal case. Robert E. Barrat was first appointed by the Court after Petitioner's arrest. The attorney client relationship quickly broke down, and Petitioner requested a new lawyer. On August 6, 2008, the Court held a hearing on the motion in which Petitioner claimed that all Mr. Barrat wanted him to do was plead guilty. The following day the Court appointed Lary D. Garrett, who is the subject of Petitioner's current complaints. At the evidentiary hearing recently held by this Court on the two remaining habeas issues, Petitioner testified that Mr. Garrett only met with him one time and never discussed a plea with him.

On the other hand, Mr. Garrett testified that, shortly after he was appointed, he called Assistant United States Attorney Erin Reisenweber to determine if the plea was still on the table. After confirming that it was, on August 14, 2008, Mr. Garrett sent Petitioner a three page letter, which Petitioner acknowledged receipt of, in which he discusses the plea and the possible sentencing implications if he were to accept the plea. That letter did, however, recommend that Petitioner take the case to trial due to a perceived weakness in the government's case. Moreover, on August 19, 2008, Mr. Garrett met with Petitioner for "the better part of an hour," wherein he testified that he discussed the plea with Petitioner. He said that he did not push the plea on Petitioner, however, because that is the reason he wanted a new lawyer the first time around.

As the trial date approached, a revelation in the case had counsel changing his mind about

the attractiveness of the plea offer. On October 15, 2008, Mr. Garrett testified that he called Petitioner to tell him that his co-defendant, Travis Latta, had entered into a plea, that he would likely testify as a result of that plea, and the implications this revelation had on his case. The following day, Mr. Garrett sent Petitioner another letter saying, based on Latta's possible testimony, that the plea was looking like the better idea. Petitioner denied receipt of this letter. Finally, on October 17, 2008, the Court held a pretrial conference. Mr. Garrett testified that he met with Petitioner on that day at the United States Marshal's lockup, and that he is certain he would have again discussed the plea.

While Petitioner made much ado about a day-of-trial plea offer, the United States testified at the hearing that no such offer existed, and that the only plea offer ever made was the one made shortly after the charges were brought.

With the *Strickland* standard already developed, the Court will turn specifically to how the Supreme Court has dealt with plea bargains in the *Strickland* arena. There are two lines of cases that have developed regarding plea bargains and their effect on ineffective assistance of counsel claims. First is the line of cases where an appellant or petitioner claims that counsel provided incorrect advice pertinent to the plea, and that but for that attorney's bad advice the appellant would have chosen to go to trial instead of accepting the plea, or chosen to accept the plea rather than going to trial. *See Hill v. Lockhart*, 474 U.S. 52 (1985); *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). The second line, which has been newly minted by the Supreme Court, involves counsel's failure to convey a plea offer. *See Missouri v. Frye*, 132 S. Ct. 1399 (2011). Petitioner's argument is unavailing under either.

In *Frye*, the Court held that "defense counsel has the duty to communicate formal offers from

6

the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 1408. The Court went on to find that "trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims . . . after a trial leading to conviction with resulting harsh consequences." *Id*. at 1408-09. *Frye* is factually inapposite to Petitioner's claims. Petitioner was made aware of the one and only plea offer on the table on numerous occasions by two separate lawyers. In fact, the main reason he wanted out of the relationship with his first counsel was because that attorney told him it would be wise to accept the offer. He is now alleging a day-of-trial offer to try and escape from the punishment that resulted. Because the only formal offer by the government was conveyed to Petitioner on several occasions, and it was even recommended by both attorneys that he take the offer, the holding in *Frye* is not applicable.

The instant case follows more along the lines of the *Hill* and *Padilla* cases, and another case decided the same day as *Frye*, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). *Hill* and *Padilla* are also factually inapposite because in both of those cases the client complained of bad advice given that resulted in the client taking the plea. This leaves *Lafler*, which is much more on point. In *Lafler*, counsel advised Defendant not to take a plea because he felt the state could not prove intent to commit the crime charged. *Lafler*, 132 S. Ct. at 1383. Although Petitioner's counsel initially advised him that he should not take the plea that was on the table because he saw a hole in the government's evidence with regard to intent, counsel later changed that stance after more evidence emerged and suggested, both in person and in writing, that Petitioner *take* the plea. It was then in Petitioner's hands. He chose to go to trial and he lost.

In short, counsel here did everything required by the constitution. A plea offer was conveyed and explained, and Petitioner was not misled into rejecting a plea offer based on unwise advice of

his lawyer. Petitioner cannot now claim that the plea was never offered or that his attorney gave him advice not to take it to escape his conviction. For these reasons, counsel was not deficient and Petitioner's claims regarding ineffective assistance in the plea bargaining stage must fail.

## *B. The Jail Housing*

Petitioner also argues that his attorney, Mr. Garrett, failed to investigate his claims that he could not have had the conversations alleged by Clinkscale because he was in the SHU during those times. While the Court questions counsel's failure to move for a continuance to investigate the claims, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 668. For the foregoing reasons the Court finds that Petitioner has not been prejudiced by the potential shortcoming of his attorney.

Again, under *Strickland*, failure to establish either prong is fatal to a claim of ineffective assistance. *Id.* at 700. To show prejudice by a lawyer's deficient performance, Petitioner would have to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 691; *see also Tice v. Johnson*, 647 F.3d 87, 102-03 (4th Cir. 2011). Here, there is sufficient evidence to show that investigation into Petitioner's allegations would not contradict Clinkscale's statements to the jury.

During Petitioner's trial, Darryl Clinkscale testified to several encounters with Petitioner during the three weeks he was housed at the ERJ for the Cecil Ray trial. First, Clinkscale testified that Petitioner wrote him a note engraved in a bar of soap that said "that dude from Philly is a snitch," which apparently referred to Clinkscale's forthcoming testimony in the Ray trial. (Tr. 50.)

8

He further testified that Petitioner watched him while he read the note, and that he then flushed it down the toilet. (*Id*.) The next interaction Clinkscale claimed he had with Petitioner was when Petitioner alerted him to the presence of Cecil Ray outside Petitioner's cell window, which is adjacent to the recreation yard for the A-pod at ERJ. Clinkscale testified that Ray tried to get him to "switch [his] story up," and that Petitioner stood outside the cell during this conversation. (*Id*. at 51.) Finally, Clinkscale testified that the night he returned from giving his testimony in the Ray trial he heard somebody from the next pod over saying that he had just "told on somebody," and when he looked over he saw Petitioner standing at the door. (*Id*. at 52.)

Petitioner's main contention is that he was in the SHU during all three of these encounters. However, the Inmate Living Unit Listings for Petitioner, Clinkscale, and Ray, do not paint such a clear picture as Petitioner suggests. Specifically, Petitioner and Clinkscale were cell neighbors–above and below–in the same pod section (A5) for a ten day period from August 13, 2007, to August 23, 2007. Mr. Bittinger, the Chief Corrections Officer at ERJ, testified during the hearing that the cell doors remain open during the day so that the inmates can freely come and go and socialize in the common space of the pod. Certainly the incident with the soap note could have happened during this time, and before the two day trial of Cecil Ray which commenced on August 29, 2007.

Further, Cecil Ray was housed in the SHU, which is located in the A-pod, from August 17, 2007, to August 26, 2007. Mr. Bittinger also testified during the hearing that the A-pod inmates, including those housed in the SHU, recreate in a yard specifically designated for that pod, and that this recreation yard is adjacent to the cell window in which Petitioner was housed. Further, Bittinger testified that all SHU inmates receive one hour of recreation time per day. Thus, the conversation

9

that Clinkscale claims occurred with Ray through Petitioner's cell window could have happened anywhere from August 17, 2007 to August 23, 2007.

In the final encounter Clinkscale testified that Petitioner was standing at the door to an adjacent pod when he heard someone say that he was a snitch. Clinkscale testified that this occurred the night he returned from Ray's trial, which could have been August 29 or 30 of 2007.[2] On either of those dates Petitioner was housed in the SHU, which is located in A-pod Section 6, while Clinkscale remained in A-pod Section 5; Section 6 is adjacent to Section 5 Thus, there is a possibility that the conversation Clinkscale heard did in fact occur.

In sum, Petitioner has not established a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." As outlined above, even if Petitioner's lawyer obtained the housing arrangements to present to the jury, and to cross examine Clinkscale, those arrangements appear to support Clinkscale's testimony. Certainly, Mr. Garrett could have cross-examined Clinkscale to try to fish out any inconsistencies, but this Court cannot say that there is a reasonable probability that this would have changed the jurors minds. Moreover, there was also other testimony presented to the jury that went to the element of intent. Travis Latta, Petitioner's co-defendant, testified that the reason that they were shooting at Clinkscale was because Tank said that Clinkscale snitched on Esco (Cecil Ray).[3] Thus, even absent Clinkscale's

---

[2] Clinkscale testified on August 30, 2007, but the Court is unsure whether he was taken to the courthouse holding for both dates.

[3] The full portion of that testimony is as follows:

Q. So your testimony today is that Tank said that D Nice [Clinkscale] did something to him?

A. Yes.

Q. Did he say specifically what he did to Tank?

10

testimony, the government produced a witness that went to the element of intent. This is sufficient evidence which does not undermine the outcome reached by the jury.

## IV. CONCLUSION & RECOMMENDATION

Petitioner has not shown that his counsel's performance fell below the standard required by the Sixth Amendment to the United States Constitution. Thus, the undersigned **RECOMMENDS** that the remaining grounds, One and Fifteen, of Petitioner's Motion to Vacate under 28 U.S.C. § 2255 be **DENIED**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

---

A. He just said he told on him. But like after--after we had pulled off on the highway whenever we was going towards--towards--towards King Street exit, like I told you, on the highway, he had started talking about--he reached for my hand. He was like, Look, Slim, he is saying that's what you know, that's what the faggot gets, whatever, from telling on Sonny.

Q. Telling on Sonny?

A. He is saying something like that. He didn't say his name at first. Do you--do you know what I'm saying? He was kind of speaking to himself. Do you know what I'm saying? We were kind of like, Who are you talking about? You know what I'm saying? And he was like, He told on Esco. You know what I'm saying? And I'm--I'm indefinite as to who Esco even is. Do you know what I'm saying?

Q. You have no idea who Esco is?

A. I couldn't pinpoint him out if you asked me to.

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se plaintiffs by certified mail, return receipt requested, to their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATE: January 15, 2013                    /s/ *James E. Seibert*
                                          JAMES E. SEIBERT
                                          UNITED STATES MAGISTRATE JUDGE